**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DERRICK SIMS,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 1:20-cv-01243- (CJN)** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | : | |
| **Defendant.** | : | |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to *Fed. R. Civ. P. 56* and the entire record of the case, the Defendant Washington Metropolitan Area Transit Authority (WMATA) hereby moves this Court for summary judgment. In support of this motion, the Defendant submits the attached Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute, Exhibits, and proposed Order.

WMATA is entitled to summary judgement in its favor on Count I (Race Discrimination/Disparate Treatment Under Title VII) because Plaintiff cannot show that WMATA's nondiscriminatory reason for terminating Plaintiff's employment, namely his violation of WMATA's Electronic Device Policy, was pretext.

WMATA is also entitled to summary judgment on Plaintiff's remaining counts (Count II: Wrongful Termination) and Counts III and IV (Negligent Termination) because WMATA's employment decisions are immune from suit. *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997); *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997).

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY

*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-1468

**CERTIFICATE OF SERVICE**

I certify that, on this 21st day of January 2022, a copy of the foregoing Defendant's Motion for Summary Judgment, supporting Memorandum of Law and Points and Authorities, Statement of Material Facts Not in Dispute, Affidavit, Exhibits and proposed Order was electronically transmitted to:

Charles Tucker
Tucker Moore Group, LLP
8181 Professional Place, Suite 117
Hyattsville, MD. 20785

*/s/ Michael K. Guss*
Michael K. Guss

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DERRICK SIMS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 1:20-cv-01243- (CJN)** |
| | : | |
| | : | |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**Statement of Facts**

Plaintiff Derrick Sims is a former WMATA Bus Mechanic who was terminated on September 6, 2019 after an investigation confirmed his violation of WMATA Policy Instruction ("P/I") 10:3/4: Electronic Device Policy ("Electronic Device Policy) by using his personal cellphone while operating a WMATA Metrobus on September 3, 2019. (S.M.F. ¶¶ 1-3).

Plaintiff was operating WMATA Metrobus #7396, driving southbound on DC Route 295, when he was observed by WMATA Transit Field Supervisor Samuel Laughery smoking a lit cigarette and using his cellphone. (Dkt. 14-4: Laughery Email, Subject: Bus 7396 Mechanic Derrick Sims); (Laughery Dep. 30:11-32:7, Mar. 10, 2021); (Dkt. 15-5: Derrick Sims Written Statement). Video of the incident confirmed Laughery's observations and Plaintiff was subsequently terminated. (Dkt. 15-12: Video of Incident).

WMATA's Electronic Device Policy is a "zero tolerance" policy when the WMATA vehicle operated is a revenue vehicle, meaning, that the first offense for violating the policy when

operating a revenue vehicle is automatic discharge of employment. (S.M.F. ¶¶ 6-7), (Dkt. 15-2: P/I 10.3/4) (Dkt. 15-7: Rule 30(b)(6) Deposition of Joshua L. Greenfield) (Greenfield Dep. 22:8 – 23:8, July 17, 2021). The policy states that a WMATA Metrobus is always considered a revenue vehicle, "whether in revenue service or not." (S.M.F. ¶ 4); (Greenfield Dep. 33:20- 34:21); (Laughery Dep. 18:11-19:1).

Plaintiff alleges that his termination for violating the Electronic Device Policy is pretext for racial discrimination because a white coworker by the name of Brett Miller was given a 20-day suspension for leaving the scene of an accident and making false statements, which is a different work rule then the Electronic Device Policy. Mr. Miller, in lieu of taking the suspension, later retired. Considering the video, Plaintiff also claims that he did not "use" his cellphone in violation of the policy.

## <u>Argument</u>

**WMATA Is Entitled to Summary Judgment in its Favor on Count I (Racial Discrimination Under Title VII) Because Plaintiff Was Terminated for A Legitimate Non-Discriminatory Reason**

WMATA is entitled to summary judgment in its favor on Count I (Race Discrimination Under Title VII) because he was terminated for a legitimate, non-discriminatory reason— namely his violation of WMATA's Zero Tolerance Electronic Device Policy. In addition, Plaintiff lacks comparative evidence to show pretext because the white co-worker he attempts to proffer as a comparator was disciplined for a completely different work rule that allows a level of discretion for discipline, unlike the Electronic Device Policy violated by Plaintiff.

It is unlawful under Title VII of the Civil Rights Act "to discriminate on the basis of …

race or national origin." *See* 42 U.S.C. § 2000e-2 (a) (1). The two essential elements of a racial and/or national origin discrimination claim are (1) that the plaintiff suffered an adverse employment action (2) because of the plaintiff's race and/or national origin. *Brady v. Office of Sergeant of Arms,* 520 F.3d 490, 493 (D.C. Cir. 2008); *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

"An employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Brown v. Brady*, 199 F.3d 446, 457 (D.C. Cir. 1999); *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Purely subjective injuries are not adverse employment actions. *Forkkio*, 306 F.3d at 1131. National origin "on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co*., 414 U.S. 86, 88 (1973).

Plaintiff must also prove causation, meaning he must show "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 343 (2013). A claimant can prove prohibited discrimination either through direct or indirect evidence that the legitimate, non-discriminatory reason offered by her employer is pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *see also Jackson v. Gonzales*, 496 F.3d 703, 706 (D.C. Cir. 2007). When there is no direct evidence of discrimination, as is the case here, courts must turn to the burden-shifting framework of *McDonnell Douglas*, keeping in mind that the burden of persuasion remains with the plaintiff always. *Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 149 (D.D.C. 2013).

Once the employer asserts a legitimate, non-discriminatory reason for the actions taken

against the claimant, the D.C. Circuit instructs the district court at the summary judgment phase to ignore whether plaintiff has actually made out a *prima facie* case under *McDonnell Douglas*, but instead resolve one central question: **"Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of … race …?"** *See Brady v. Office of Sgt. at Arms, U.S. House of Reps.,*520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis added). In resolving this "central question," the court looks to "(1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff … or any contrary evidence available to the employer …." *See Wheeler v. Georgetown University Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) (quoting *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C. Cir. 1998)). "While the plaintiff need not 'submit evidence over and above rebutting the employer's stated explanation to avoid summary judgment,' the plaintiff must do more than merely state a disagreement with, or disbelief of, the explanation to satisfy the burden of showing that a reasonable jury could find that the employer's asserted reason" was pretext. *See Warner v. Vance-Cooks,* 956 F. Supp. 2d 129, 150 (D.D.C. 2013); *see also Fatemi v. White*, 775 F.3d 1022, 1041 (8th Cir. 2015) (A "bare assertion and speculation as to [an employer's] motive does not create a genuine issue of material fact.").

A claimant can prove discriminatory intent either by direct or indirect evidence. *See Holbrook v. Reno*, 196 F.3d 255, 260 (D.C. Cir. 1999). In this case, Plaintiff has not alleged any direct evidence of discrimination, but alleges that his termination was evidence of discrimination because Brett Miller ("Miller"), a white coworker, was recommended for a lessor level of discipline than Plaintiff. In order to present proper comparator evidence, Plaintiff "must

demonstrate (1) that he is a member of a protected class; (2) that he was similarly situated to an employee who is not a member of the protected class; and (3) that he and the similarly situated person was treated disparately." *Holbrook* at 261.

In this case, Plaintiff must show that he and Miller were charged with offenses of "comparable seriousness." *See Holebrook* at 261 (citing *Lynn v. Deaconess Med. Ctr.-West*, 160 F.3d 484, 488 (8th Cir. 1998)). Plaintiff must also show that "all of the relevant aspects of his employment situation were 'nearly identical' to Miller's. *Id*.; *see also Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir. 1994)). Similarly situated in all relevant respects means that Miller, the white employee identified by Plaintiff, was disciplined by the same supervisor, was subject to the same standards and engaged in the same conduct without any mitigating or distinguishing circumstances, and, in cases involving discipline, the similarity of their offenses. *See Burley v. Nat'l Passenger Rail Corp.,* 801 F.3d 290, 301 (D.C. Cir. 2015); *see also Fatemi v. White*, 775 F.3d 1022, 1042 (8th Cir. 2015).

First, Plaintiff's assertion that he did not violate the Electronic Device Policy because he did not "use" his cellphone is ludicrous especially after viewing the video of the incident.

> The Supreme Court has expressly held that where video evidence is available, if a nonmoving party at summary judgment adopts a position 'blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of summary judgment.'

*White v. U.S.*, 863 F. Supp.2d 41, 48 (D.D.C. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

Under Section 3.09 (a) of the policy, "using an electronic device means . . . using the electronic device's functions, such as, *but not limited to*, viewing, charging, using the electronic

device to check the time, or to check to see if any messages have been received." (Emphasis added) (S.M.F. ¶ 5). Plaintiff read and understood the policy prior to his termination and understood it was a "zero tolerance" policy. (Sims Dep. 34:5- 39:6, 67:16-21, Mar. 3, 2021).

Video of the incident clearly shows Plaintiff using his cellphone in violation of the policy. At the [5:39:50] mark, Laughery, in a white SUV with a Metro logo, can be seen driving on the left side of the Metrobus operated by Plaintiff. At the same mark, the video shows Plaintiff smoking a lit cigarette while driving the bus. (Dkt. 15-14: Camera Angle 6 of Video at [5:39:50]). While Laughery's vehicle is still seen pacing the Metrobus in order to continue his observations of Plaintiff [5:39:56], Plaintiff reaches into his right pants pocket [5:39:59], takes out his personal cellphone [5:40:01] and looks down at the lit cell phone for approximately 2 to 3 seconds. [5:40:02 to 5:40:04]. While Laughery's vehicle is still seen in the driver's side window of the Metrobus, Plaintiff looks down at his cellphone a second time at the [5:40:09] mark. The video also shows Plaintiff still holding his cellphone in his right hand at [5:40:08] when he is observed looking to the left directly at the white WMATA SUV driven by Laughery. It is at the [5:40:09] mark of the video that Plaintiff places the cellphone between his legs. Regardless of his denials, Plaintiff admits in his deposition that he was viewing the cellphone. (Sims Dep. 42:20-42:7).

Plaintiff's secondary argument is that if, assuming *arguendo*, he was using his cellphone in violation of the Electronic Device Policy, his termination is discriminatory because a white mechanic (Miller) was not subject to termination for violating another work rule that the Plaintiff believes was equally egregious to his violation.

On October 4, 2019, Bus Mechanic Brett Miller was operating a WMATA Metrobus that hit a bollard at a hotel parking lot causing damage to the bus. (Dkt. 15-8: Miller Oct. 4, 2019 Investigation Report). Rather than report the accident immediately, Miller broke two WMATA

work rules by failing to immediately contact the Bus Operations Control Center ("BOCC") at the time the accident occurred, and he gave an untruthful statement about how and where the accident occurred. (Dkt. 15-8). Video of the incident confirmed that Miller was less than truthful about the event. In lieu of termination, Miller was given a 20-day suspension with a final warning. (Dkt. 15-8).

In this case, Miller is not a proper comparator. While termination is a consideration for breaking the above-mentioned WMATA work rules cited in the Miller investigation report, unlike a violation of the Zero Tolerance Electronic Device Policy, supervisors are afforded a degree of discretion when it comes to discipline. (Greenfield Dep. 56:12-60:14). Miller and the Plaintiff violated two different rules. One, the Electronic Device Policy, is a zero tolerance rule that offers no grace when operating a revenue vehicle, while the work rules violated by Miller do offer discretion. The conduct of the two and the nature of the work rules violated are not similar; therefore, discrimination cannot be inferred from comparing the two levels of misconduct.

**Plaintiff's Tort Claims Should Be Dismissed Because WMATA is Immune from Allegations of Tortious Conduct Arising out of Its Discretionary Functions.**

Plaintiff's wrongful termination claim (Count II)[1]; and his two "negligent termination" claims (Count III and IV) should be dismissed because WMATA enjoys sovereign immunity for torts committed in the performance of its discretionary decision to terminate the Plaintiff from his employment. *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997); *Headen v. WMATA*,

[1] Even if WMATA's sovereign immunity did not apply, Plaintiff's wrongful termination in violation of public policy claim would fail because the District of Columbia only recognizes such a cause of action in only one exception — where the sole reason for the discharge is the employee's refusal to violate the law as expressed in a statute or municipal regulation. *Hoskins v. Howard University*, 839 F. Supp. 2d 268, 281 (D.D.C. 2012).

741 F. Supp.2d 289, 295-96 (D.D.C. 2010) (former employee's defamation, wrongful termination and intentional infliction of emotional distress claims are subject to WMATA's sovereign immunity for tort claims because they arise out of personnel decisions).

Section 80 of the WMATA Compact states:

> **The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function.** The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority.

*See* D.C. CODE ANN. § 9-1107.01 (80) (2015). (Emphasis added).

Plaintiff's tort allegations arise out of WMATA's investigation of his violation of the Electronic Device Policy. WMATA's personnel decisions, which are considered discretionary decisions, are shielded by sovereign immunity. It follows, therefore, that any torts alleged to have arisen out of WMATA's discretionary decision to terminate Plaintiff's employment are logically barred from suit by WMATA's immunity. See D.C. CODE ANN. §9-1107.01 (80) (2015); *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (Tort claims arising out of WMATA's employment decisions are shielded by WMATA's immunity). Therefore, Plaintiff's tort allegations should also be dismissed.

For the forgoing reasons, WMATA respectfully requests that the Court dismiss this case, with prejudice.

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY

*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-1468

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DERRICK SIMS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 1:20-cv-01243- (CJN)** |
| | : | |
| | : | |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | : | |
| | : | |
| **Defendant.** | : | |
| ______________________________ | : | |

**ORDER**

UPON CONSIDERATION of Defendant WMATA's Motion for Summary Judgment, and the entire record of the case, it is this ________________ day of _________________________, 2022; ORDERED, that the motion is GRANTED, and the case is dismissed with prejudice for the reasons stated in the Defendant's motion and supporting memoranda of points and authorities.

This is a Final Order

____________________________
Judge Carl J. Nichols

Copies to:

Michael K. Guss
Senior Counsel
WMATA-COUN
600 Fifth Street, NW
Washington, D.C. 20001

Charles Tucker
Tucker Moore Group, LLP
8181 Professional Place, Suite 117
Hyattsville, MD. 20785