**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DERRICK SIMS,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Case No. 1:20-cv-01243- (CJN)** |
| | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S**
**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR**
<u>**SUMMARY JUDGMENT**</u>

Defendant WMATA hereby files its Reply to Plaintiff's Opposition to Defendant's

Motion for Summary Judgment and contends the following:

**WMATA's Legitimate Nondiscriminatory Reason for Terminating Plaintiff Is Clear and**
**Supported by Overwhelming Evidence**

In his Opposition, Plaintiff argues that WMATA's legitimate, nondiscriminatory reason

for terminating Plaintiff —namely his violation of WMATA's Electronic Device Policy due to

his obvious use of his personal cell phone while operating a WMATA Metrobus —does not

satisfy the four-factor test for determining the adequacy of an employer's nondiscriminatory

reason for its employment action as articulated in *Figueroa v. Pompeo*, 923 F.3d 1078, 1087

(D.C. Cir. 2019). However, not only has WMATA clearly articulated its nondiscriminatory

reason for terminating Plaintiff, it has done so with overwhelming evidence including witness

testimony, an investigation report, and a video of the incident clearly showing Plaintiff's violation.

The *Figueroa* factors for determining the adequacy of an employer's evidentiary proffer of its legitimate, nondiscriminatory reason for its employment decision are: (1) the employer must produce evidence that a factfinder may consider at, in this instance, a summary judgment proceeding; (2) if the factfinder believes the evidence, it must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason; (3) the nondiscriminatory reason given must be facially credible in light of the proffered evidence; and (4) the proffered evidence presents a clear and reasonably specific explanation. *Hogan v. Hayden*, 406 F. Supp.3d 32, 44 (D.D.C. 2019) (citing *Figueroa* at 1087).

WMATA has clearly met its burden under *Figueroa*. First, Plaintiff has not objected to the admissibility of the video of the incident, the investigation report detailing the facts that formed the basis of Plaintiff's termination, testimony from witnesses and WMATA's Rule 30(b)(6) deponent, nor the termination letter that clearly states the nondiscriminatory reason for Plaintiff's termination.

Second and third, WMATA presented evidence that it had legitimate reasons, independent of race, for terminating Plaintiff that is facially credible. The video of the incident clearly shows Plaintiff holding and looking at his cell phone while driving, which WMATA has repeatedly interpreted as "use" of a cell phone in violation of its electronic device policy. WMATA produced evidence and testimony that Plaintiff was using his cellphone while driving a WMATA Metrobus, which mandates automatic termination. Employee actions in clear violation of a company's policy are legitimate, nondiscriminatory reasons for an adverse action. *Hogan* at 32 (citing *Lewis v. Booz-Allen & Hamilton, Inc*., 150 F. Supp. 2d 81, 95 (D.D.C. 2001)).

Finally, WMATA satisfies the fourth factor because its legitimate, nondiscriminatory reason is sufficiently clear and specific enough for Plaintiff to be placed on notice of what reasoning he must challenge, specifically whether he violated WMATA's Electronic Device Policy. *Id*. The clarity of WMATA's nondiscriminatory reason for Plaintiff's termination is bolstered by Plaintiff's assertion that he was not "using" his personal cellphone. The fact that Plaintiff asserts such an argument underscores that he clearly understands what reasoning he must attack to rebut WMATA's reason as pretext, which is the reason why the *Figueroa* court developed the test in the first place.

**Plaintiff Cannot Overcome WMATA's Honest Belief of Plaintiff's Violation of the Electronic Device Policy**

Regardless, Plaintiff's true argument is not that WMATA's proffered reason for terminating him is unclear using the four-factor test articulated in *Figueroa*, his real allegation is that WMATA's decision to terminate him was incorrect; however, at the summary judgment stage, a plaintiff cannot survive summary judgment merely by asserting that his employer made a bad decision. *Morris v. McCarthy*, 825 F.3d 658, 671 (D.C. Cir. 2016).

Title VII "does not authorize a federal court to become a super-personnel department that reexamines an entity's business decisions." *Hogan* at 45 (quoting *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999)). Furthermore, a court "may not second-guess an employer's personnel decisions absent [a] demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). The appropriate question is whether WMATA honestly believed that Plaintiff violated the electronic device policy and terminated Plaintiff based on that belief. *Hogan* at 45 (citing *Morris*, 825 F.3d at 671) (To survive summary judgment, the employee must raise a genuine dispute over the employer's *honest belief* in its

3

proffered explanation.") (emphasis added); see also *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) (An "employer's actions may be justified by a reasonable belief in the validity of the reason given even through that reason may turn out to be false."). More importantly, if the employer's stated reasons for termination of the employee is reasonable considering the evidence, there is no basis under normal circumstances for allowing a jury to conclude that the employer is lying about the underlying facts. *Leavitt* at 415. Therefore, to survive summary judgment, Plaintiff cannot just show that WMATA's reasons were unfair, unjust, or not sensible, he must show that the explanation given was phony.

In this case, there is overwhelming evidence by video and testimony that Plaintiff violated the electronic device policy by using his cellphone on a revenue vehicle. *See* Laughery email [Dkt. 15-4] and Video of Incident [Dkt. 15-12]. In his opposition, Plaintiff argues that what Plaintiff was doing with his cellphone cannot be defined as "using his cellphone," but that is beside the point. WMATA, based on evidence proffered to this court, terminated Plaintiff because of its honest and reasonable belief that Plaintiff violated the electronic device policy and Plaintiff's termination is based solely on that belief, which WMATA still contends is proven after watching the video.

Plaintiff quibbles over whether WMATA could have punished Plaintiff less severely because Plaintiff is not observed talking or texting on his phone; however, there is no debate even by Plaintiff that there was no violation of the electronic device policy; therefore, the Court can infer that WMATA's reasons for terminating Plaintiff in accordance with the policy was based on a reasonable belief of its violation.

Finally, WMATA stands by its argument in its motion for summary judgment that Plaintiff has failed to present proper comparator evidence because the white employee he

proffers as a comparator is not similarly situated to Plaintiff because both persons violated completely different work rules.

**Regardless of Whether WMATA's Immunity Applies, Plaintiff's Wrongful Termination Claims Must Still Be Dismissed.**

Plaintiff's three tort claims based on wrongful termination (Count II) and "negligent termination" (Count III and IV) must be dismissed because all three claims are based on Plaintiff's allegations of racial discrimination, which is already protected by Title VII.

In the District of Columbia, wrongful termination claims are limited to claims when the sole reason for the termination "offends some mandate of public policy firmly anchored either in the Constitution, a statute, or regulation which clearly reflects the particular public policy being relied upon." *Lockhart v. Coastal Int'l Security, Inc*., 5 F.Supp.3d 101, 106 (D.D.C. 2013).

Wrongful termination in violation of public policy is a recognized claim in the District of Columbia. Initially, it was only available to at-will employees since it was considered a very narrow exception to the at-will employment doctrine. *Adams v. Cochran & Co*., 597 A.2d 28 (D.C. 1991). Subsequently, wrongful termination in violation of public policy claims were extended to unionized employees and other employees covered by an employment contract. *Byrd v. VOCA Corp. of Washington, D.C*., 962 A.2d 927, 933-34 (D.C. 2008).

However, a plaintiff may not seek relief under a theory of wrongful termination in violation of public policy if the alleged public policy is articulated in a statute that carries its own remedy for violation. *Lockhart* at 106. (citing *McManus v. MCI Commc'ns Corp*., 748 A.2d 949, 957 (D.C. 2000)) (refusing to create a public policy exception for claims of wrongful termination based on discrimination because the District of Columbia Human Rights Act ("DCHRA") already protects the same public policy); see also *Hoskins v. Howard Univ*., 839 F. Supp.2d 268,

281 (D.D.C. 2012) (noting that the anti-retaliation provisions of Title VII and the DCHRA provide their own remedies for such conduct; therefore, Title VII cannot serve as a basis for plaintiff's common law wrongful discharge claim).

WMATA stands by its argument that it enjoys sovereign immunity for torts committed in the performance of its discretionary decision to terminate Plaintiff's employment, and Plaintiff's argument that WMATA's decision to terminate him was ministerial because it was mandated by WMATA's Electronic Device Policy is completely undermined by Plaintiff's argument that WMATA had a choice of what discipline to charge Plaintiff; thus, discretion in part B of his Opposition.

Regardless, all three of Plaintiff's wrongful termination claims are based on his allegation that WMATA either intentionally or "negligently" terminated Plaintiff because he is African American. (Comp. ¶¶ 52-77) [Dkt. 1]. Employment actions based on racial discrimination are already covered by the DCHRA[1] and Title VII; therefore, Plaintiff's wrongful termination claims must be dismissed because they do not fall within the narrow public policy exception for common law wrongful termination claims in the District of Columbia.

Wherefore, for the reasons in its Motion for Summary Judgment and this Reply, WMATA respectfully request judgment in its favor.

---

[1] WMATA is not subject to the DCHRA. *Ndzerre v. WMATA*, 174 F. Supp.3d 58 (D.D.C. 2016)

Respectfully submitted,


WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY


*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1468

## **CERTIFICATE OF SERVICE**

I certify that, on this 16th day of March 2022, a copy of the foregoing Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment was electronically transmitted to:

Charles Tucker
Tucker Moore Group, LLP
8181 Professional Place, Suite 117
Hyattsville, MD. 20785

*/s/ Michael K. Guss*
Michael K. Guss