UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DERRICK SIMS,<br><br>      *Plaintiff*,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>      *Defendant*. | Civil Action No. 1:20-cv-01243 (CJN) |

**MEMORANDUM OPINION**

Plaintiff Derek Sims sued his former employer, the Washington Metropolitan Area Transit Authority, alleging race discrimination and other claims regarding his termination. Compl., ECF No. 1. WMATA moves for summary judgment, contending that Sims was terminated for violating its Electronic Device Policy and that it has sovereign immunity as to his other claims. Def.'s Mot., ECF No. 15. Sims does not dispute that he violated WMATA's Electronic Device Policy, but he argues that under WMATA's policies he should have been suspended, not terminated. Pl.'s Opp., ECF No. 17. For the following reasons, the Court grants the motion.

**Background**

Sims is an African American male who was employed by WMATA as a bus mechanic. On September 3, 2019 between about 5:30 and 6 A.M., Sims was operating a Metrobus on D.C. Route 295. Investigation Report, ECF No. 15-3; Video of Incident, ECF No. 15-12. While Sims was driving the bus, WMATA Transit Field Supervisor Samuel Laughery observed Sims smoking a cigarette and looking at his phone. Laughery Email, ECF No. 15-4. Video of the incident shows Sims smoking, Sims holding his smartphone in his right hand for a few seconds and glancing at

1

the screen several times, and Laughery's vehicle in the background. Video of Incident (Angle 6). A screenshot of the video is captured below:



*Id.* at 5:40:03. The phone's activity log did not record any activity during the relevant time period. Pl.'s Opp. at Ex. C.

On September 6, 2019, WMATA terminated Sims' employment. Termination Letter, ECF No. 15-6. WMATA's justification for the termination is that he violated the Electronic Device Policy § 3.09 by operating a bus while "using" his cellphone. *Id.*

Section 3.09(a) of the policy prohibits "using an electronic device means using the electronic device's functions, such as, but not limited to, viewing, charging, using the electronic device to check the time, or to check to see if any messages have been received." WMATA Policies, ECF No. 15-2. Section 6.01 provides the discipline for violations of the Electronic Device Policy: "(a) Using an Electronic Device while Operating a Revenue Vehicle, *First Offense: Discharge*; and (b) Any other violation in Revenue Vehicles (i.e., an operator having a phone on

their person while operating) (1) First Offense: 10-day suspension (2) Second Offense: Discharge." *Id.* (emphasis added).

Sims filed suit, alleging that WMATA violated Title VII of the Civil Rights Act of 1974 by terminating his employment, and also alleging that WMATA committed the torts of wrongful termination and negligence relating to his termination. *See generally* Compl., ECF No. 1. WMATA moves for summary judgment on the grounds that Sims was legitimately terminated for violating its Electronic Device Policy and that WMATA has sovereign immunity as to the tort claims.

**Legal Standard**

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party has met its burden, the nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" to defeat the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Though the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" its position, *Anderson*, 477 U.S. at 252. In other words, "there must be evidence on which the jury could *reasonably* find for" the non-moving party. *Id.* (emphasis added). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255).

It is unlawful under Title VII of the Civil Rights Act "to discriminate on the basis of . . . race or national origin." *See* 42 U.S.C. § 2000e-2 (a)(1). The two essential elements of a racial discrimination claim are (1) that the plaintiff suffered an adverse employment action (2) because of the plaintiff's race. *Brady v. Office of Sergeant of Arms,* 520 F.3d 490, 493 (D.C. Cir. 2008); *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). As to the second element, once an employer asserts a legitimate, non-discriminatory reason for its action, the key question is whether the employee produced sufficient evidence for a reasonable jury to find the employer's asserted reason was not the actual reason. *See Brady*, 520 F.3d at 494. In relying on comparator evidence to establish an inference of discrimination, a plaintiff must demonstrate he was "similarly situated" to an employee outside of his protected class and that the two were treated disparately. *Holbrook v. Reno*, 196 F.3d 255, 260 (D.C. Cir. 1999).

**Analysis**

**I.   No Reasonable Jury Could Find for the Plaintiff on Count I.**

WMATA contends that Sims's Title VII claim for racial discrimination should be dismissed because WMATA terminated Sims for a legitimate non-discriminatory reason: his violation of WMATA's Electronic Device Policy. Def.'s Memo., ECF No. 15, at 2–7. WMATA argues that taking action because of an employee's violation a company's policy constitutes a legitimate, nondiscriminatory reason. *Hogan v. Hayden*, 406 F. Supp. 3d 32, 44 (D.D.C. 2019) (citing *Lewis v. Booz-Allen & Hamilton, Inc.*, 150 F. Supp. 2d 81, 95 (D.D.C. 2001)). And, WMATA argues, Sims's purported comparator, Mr. Miller, was not similarly situated.

Sims contends that WMATA's purported reason for firing him is incoherent. Pl.'s Opp. at 3–6. He contends that WMATA's policy is vague regarding whether he actually *used* a phone and that "offering a vague reason [for termination]—is the equivalent of offering no reason at all."

*Figuera v. Pompeo*, 923 F.3d 1078, 1092 (D.C. Cir. 2019). Sims further argues that a reasonable jury could conclude he had "a phone on [his] person" but did not "use" his phone, so the appropriate punishment under the policy was a 10-day suspension. Pl.'s Opp. at 5–12; WMATA Policies at § 6.01.

The Court believes the video is dispositive. *See, e.g.*, Video of Incident (Angle 6) at 5:39:50–5:40:13. Despite Sims' assertions, it is readily apparent from the video that Sims, while driving, holds his phone in his hand screen up and looks down several times at his phone. Sims contends that the phone was falling out of his pocket and that he merely held it. But even if he initially grabbed the phone because it was falling out of his pocket, no reasonable juror could conclude he was merely finding a secure place for it. Sims notes that the phone's activity log shows there was no activity during the relevant time period, and that the screen turned on only because it was being lifted. *See* Pl.'s Opp. at Ex. C. Even if true, it is still beyond any genuine dispute that Sims was *viewing* (i.e., looking at) his phone (not to mention either or both checking the time or seeing any notifications or messages). Recall that WMATA's policy provides that one is "using" an electronic device when "viewing" it or "using the electronic device to check the time, or to check to see if any messages have been received." WMATA Policies at § 3.00. Plaintiff is correct that there is a colloquial form of the phrase "using a phone" that requires more than mere viewing. Pl.'s Opp. at 7–12. But the policy expressly defines "using" to include "viewing," WMATA Policies at § 3.00, which is exactly what the video shows Sims was doing.

In any event, the "appropriate question" is not whether the policy expressly covers Sims's conduct, but whether WMATA "honestly believed" Sims violated the policy such that it could not be said to have acted with discriminatory intent. *See Hogan*, 406 F. Supp. 3d at 46; *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) (An "employer's action may be justified by a

5

reasonable belief in the validity of the reasons given even though that reason may turn out to be false."). Sims has not raised a genuine question as to WMATA's belief that it was applying its policy appropriately.

Sims also argues that WMATA's proffered reason for terminating him is pretextual because a similarly situated white employee was suspended rather than terminated. Pl.'s Opp. at 12–14. In particular, Sims points to Brett Miller, a white male WMATA bus mechanic, who operated a metrobus and hit a bollard in a hotel parking lot, causing damage to the bus. *See* Miller Investigation Report, ECF No. 15-8. Sims notes that Miller did not immediately report the accident, left the scene, and made false statements in the incident report. *Id.* And, Sims contends, Miller was given just two 10-day suspensions despite violating at least two clear and severe policies:

> 1.2.1 Employees must make timely, complete, and truth statements at all times.
> 1.2.2 Any employee providing false or misleading information or documentation will be subject to immediate dismissal.
> . . .
> 1.33.1 . . . Failure to immediately report an accident or incident or any attempt to conceal or misrepresent facts is an extremely serious violation of rules and will result in dismissal.

Pl.'s Opp. at Ex. A (WMATA Notice to Operators).

But as Sims admits, in order to establish that Miller is a similarly-situated comparator, he must "demonstrate that all of the relevant aspects of [his] employment situation were nearly identical to" the comparator. *Holbrook*, 196 F.3d at 261 (quotation marks omitted). Sims has not done so. Miller violated different provisions with different remedial provisions. Here, WMATA considered the Electronic Device Policy a zero-tolerance policy that offers no grace, whereas the other rules afforded supervisors a degree of discretion. Greenfield Depo. 22–23, 56–66. Even if the rules Miller violated could be read to be zero-tolerance, WMATA did not apply them that way and Sims has not provided any evidence to contest WMATA's honest belief in its proffered

6

explanations.  The policies and violations are too different for discrimination to reasonably be inferred from the different treatment.[1]

## II.     WMATA Has Sovereign Immunity Over the Tort Claims.

WMATA argues that Counts II, III, and IV fail as a matter of law because WMATA has sovereign immunity for torts committed in the performance of its discretionary duties, including personnel decisions.  *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997).  Section 80 of the WMATA Compact[2] states:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function.

D.C. Code § 9-1107.01 (80) (2015).  WMATA contends that tort claims, like Sims' wrongful termination and negligent termination claims, are discretionary and so shielded by WMATA's immunity.  *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997).

Sims responds that sovereign immunity does not apply to his claims because his termination was not a "governmental" act within the meaning of the WMATA Compact.  Pl.'s Opp. at 14–15.  He contends that WMATA's actions are governmental only if they are either a "quintessential government function" or if they are a discretionary, as opposed to ministerial, act.  *See Smith v. WMATA,* 290 F.3d 201, 207 (4th Cir. 2002).  Sims contends that compliance with the

---

[1] Sims also presents a petition signed by 35 members of his bus garage that states "there's been a clear racial bias at our division that can no longer be tolerated also we would like [M]r. Derrick Sims to be reinstated[.]"  Pl.'s Opp. at Ex. F.  But the letter does not raise a genuine dispute as to any material fact at issue in Sims' termination.

[2] The WMATA Compact is an interstate compact approved by Congress.  It is generally treated as equivalent to Federal law.

Electronic Device Policy is not discretionary because it specifically prescribes a course of action for the agency to follow.

The Court agrees with WMATA.  This has long been settled by the Court of Appeals. WMATA has sovereign immunity for its personnel and termination decisions.  *Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[D]ecisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review."); *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997).  Plaintiff made no attempt to distinguish *Burkhart*.  *See generally* Pl.'s Opp.  Even if the Court were not bound by *Burkhart*, the Court would still conclude that WMATA has discretion here, including in its interpretation of the facts underlying employment decisions, the application of those facts to existing policies, and the decision to continue to apply its policies.  *See Burkhart*, 112 F.3d at 1216–17.

## Conclusion

Accordingly, the Court grants the Defendant's motion.  An order will issue contemporaneously with this opinion.

DATE:  August 11, 2022

CARL J. NICHOLS
United States District Judge